IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

___

LINDA COCKRILL, NEXT OF KIN
FOR BELINDA COCKRILL, DECEASED,

    Plaintiff,

VS.

No._____

JURY DEMANDED

LAURA BAXLEY, NURSE PRACTITIONER
JEFFREY BURRIS, RN
SAMANTHA FLOYD, RN
MISTI COOK, RN
TERRI HICKERSON, LPN

    Defendants.

___

**COMPLAINT FOR INADEQUATE MEDICAL TREATMENT
IN VIOLATION OF 42 U.S.C. 1983**

___

COMES NOW THE PLAINTIFF, by and through attorney of record, Luke Evans, alleges the following:

1. This court has jurisdiction over this cause under 28 U.S.C. Section 1331 in that it arises under 42 U.S.C. Section 1983 for redress of violations of plaintiff's rights secured by the Eighth Amendment to the United States Constitution.

2. Venue is proper in this court under 28 U.S.C. Section 1391.

3. At all times relevant, Belinda Cockrill ("Cockrill") was an inmate at Harding Place, CCA Metro, (hereinafter "the Facility") in Nashville, Davidson County, Tennessee.

4. Linda Cockrill is the mother and next of kin for Belinda Cockrill, who died January 9, 2016.

5. As a result of her incarceration and the deliberate indifference of the individually named Defendant employees, Cockrill suffered and died.

6. Correction Corporation of America ("CCA") is incorporated under the laws of the State of Maryland and has its principal place of business in Nashville, Tennessee. CCA operates the Facility. CCA and its employees and agents are acting under color of state law in all of their activities with respect to the incarceration of prisoners at the Facility.

7. Cockrill was a resident inmate at the Facility from September 2015 until January 8, 2016.

8. At all relevant times Defendant nurse practitioner Laura Baxley was an agent and employee of CCA at the Facility. In the alternative, the Defendant Baxley functioned as an independent contractor.

9. At all relevant times Defendant Laura Baxley was responsible for addressing and attending to the medical needs of resident inmates at the Facility.

10. At all relevant times Defendant nurses Jeffrey Burris, Samantha Floyd, Misti Cook, and Terri Hickerson were agents and employees of CCA at the Facility. In the alternative, the Defendant nurses functioned as independent contractors.

11. At all relevant times Defendants Jeffrey Burris, Samantha Floyd, Misti Cook, and Terri Hickerson were responsible for addressing and attending to the medical needs of resident inmates at the Facility during the relevant time period.

12. The Defendants each individually, were charged with the medical care of inmates housed at the Facility, including Cockrill. They are sued in their individual capacities.

## FACTS

1. Cockrill became incarcerated at the Facility in September 2015.

2. On or about September 16, 2015, Cockrill filed a medical grievance in which she indicated that she was experiencing constant stomach cramps that had persisted for six (6) days.

3. The response to the grievance, dated September 22, 2015, indicated that Cockrill be treated with Immodium, an over-the-counter medication for diarrhea, for ten (10) days.

4. On September 25, 2015, Cockrill filed another grievance, which stated that her stomach continued to hurt and that she was experiencing diarrhea.

5. In response to this grievance, Cockrill was seen in sick call on September 28, 2015, and she was scheduled to see a doctor.

6. On October 3, 2015, Cockrill filled a third medical grievance reporting persistent gastrointestinal problems that had persisted unabated for three (3) weeks.

7. In response to this grievance, she was seen by a nurse practitioner on October 5, 2015.

8. On October 11, 2015, Cockrill filed yet another medical grievance, noting the same symptoms in the prior grievances, and further noted that she was experiencing weight loss.

9. Upon consultation with a physician, she was prescribed Lomotil, a prescription medication to treat diarrhea, and her weight was to be monitored by the medical staff.

10. In late October 2015, Cockrill filed yet another grievance, in which she noted that her symptoms had not resolved with medication, and that she had lost four (4) to five (5) pounds a week for two (2) months.

11. As a result of this grievance, Cockrill was scheduled for a consultation with a gastrointestinal doctor to occur on November 18, 2015.

12. At the consult, which occurred at Nashville General Hospital, Cockrill was noted to be suffering from anemia, diarrhea, and weight loss of greater than thirty (30) pounds in two (2) months.

13. Additionally, following the consultation, she was scheduled for an endoscopy and colonoscopy to occur on December 16, 2015.

14. On December 16, 2015, the endoscopy was completed, but the colonoscopy could not be performed, due to "inadequate bowel prep."

15. The doctor that attempted the colonoscopy ordered a "repeat attempt at colonoscopy ASAP," as well as a follow-up at the gastrointestinal clinic in two (2) weeks. Furthermore, the discharge notes indicated that certain concerning symptoms should be reported to the doctor, including nausea, vomiting, and uncontrolled pain.

16. These orders and instructions were forwarded to the Facility and made a part of Cockrill's Facility medical record.

17. Upon return to the Facility, Cockrill's condition continued to deteriorate, and she continued to experience a lack of appetite, stomach pain, nausea and vomiting.

18. On December 30, 2015, at approximately 4:55 p.m., a correctional officer noted that Cockrill was complaining of pain, and was lying on the floor with difficulty breathing. Defendant Jeffrey Burris noted that the facility doctor was notified, and he ordered to "monitor" Cockrill in medical observation.

19. On January 4, 2016, at approximately 2:50 p.m., Cockrill was placed in medical observation at the facility.

20. Also, on January 4, 2016, at approximately 11:11 p.m., Defendant Samantha Floyd noted that Cockrill complained of abdominal pain. Her only "treatment plan" was to continue to monitor Cockrill.

21. On January 4, 2016, at approximately 10:10 a.m., Defendant Jeffrey Burris noted that Cockrill continued to complain of abdominal pain, weight loss, and diarrhea. His only "treatment plan" was to continue to monitor Cockrill.

22. On January 5, 2016, at approximately 1:02 p.m., Defendant Laura Baxley noted that Cockrill was seen in medical observation, where she had been placed the previous day, due to abdominal pain and weakness. She further noted that Cockrill admitted to not eating, and reported vomiting and having fifteen (15)

loose stools daily. She further noted that Cockrill stated, "that she vomits as soon as she swallows food."

23. Defendant Laura Baxley also noted that Cockrill's morning supplemental shake had not been consumed; that her lunch tray had "few bites eaten"; and that she had not voided at all that day.

24. Despite diagnosing Cockrill with anorexia and abdominal plan, Defendant Laura Baxley's treatment plan was limited to medical observation, bloodwork, a "dry cell," and for "staff to visualize all urine, stool, and emesis." Defendant Laura Baxley did not report the nausea, vomiting, or abdominal pain to the gastrointestinal doctor as previously ordered at Nashville General.

25. On January 6, 2016, at approximately 9:11 a.m., Defendant Jeffrey Burris noted that Cockrill complained of abdominal pain, weight loss, and diarrhea. Defendant Burris noted a small amount of undigested food in the emesis basis. His only treatment plan was to "continue to monitor" Cockrill.

26. On January 6, 2016, Cockrill was referred by the medical staff for a mental health assessment due to her not eating, complaining of abdominal pain, and weight loss.

27. During the mental health assessment, Cockrill complained of anxiety, fear of death, depression, and inability to sleep.

28. During the mental health assessment, the provider Caitlin Roubicek noted that Cockrill complained of nausea, vomiting, diarrhea and lack of appetite and that she was, "just waiting for medical to take her to the hospital." Roubicek noted that she replied, "I don't know if they are going to do that and she (Cockrill) said ok."

29. On January 7, 2016, at approximately 12:25 p.m., Defendant Misti Cook noted that Cockrill continued to complain of nausea and vomiting; she also noted undigested food in the emesis basin, a poor appetite, and a blood pressure reading of 86/60. The only treatment plan was to "continue to monitor" Cockrill.

30. On January 7, 2016, at approximately 11:20 p.m., Defendant Terri Hickerson noted that Cockrill reported an upset stomach, and further noted undigested food in the emesis basin left from earlier that morning. The only treatment plan listed was to "continue with current [plan of care]," which was to merely "monitor" Cockrill.

31. On January 8, 2016, at approximately 10:19 a.m., Defendant Misti Cook noted that Cockrill refused breakfast and medications, and that she was, "frequently making moaning sounds and not responding verbally to questions asked." Her only treatment plan was to "continue to monitor" Cockrill.

32. On January 8, 2016, at approximately 10:49 a.m., Defendant Misti Cook noted that Cockrill refused weekly weight; was incontinent of urine; and refused to change clothes.

33. On January 8, 2016, at approximately 12:42 p.m., Defendant Misti Cook noted that Cockrill was moaning and was not communicating. Defendant Laura Baxley was notified of these issues, as well as Cockrill's refusal of medication, weight loss, her incontinence of urine, lack of food and water, and low blood sugar. Despite the obvious deterioration of Cockrill's condition, the only "treatment plan" was to obtain blood work and continue to monitor Cockrill.

34. On January 8, 2016, at approximately 1:19 p.m., Defendant Misti Cook noted that Cockrill was non-responsive to questions; labs could not be obtained due to no vein access; and blood sugar remained low. Upon report to Defendant Laura Baxley, orders issued to send Cockrill to the emergency room via ambulance.

35. Prior to the ambulance picking Cockrill up, her clothes, which she urinated on more than two (2) hours earlier, were changed.

36. Cockrill was not physically examined by a Facility doctor between her attempted colonoscopy and her ambulance transport. Furthermore, no orders were issued from a Facility doctor in that time period.

37. The only orders issued between the failed colonoscopy and the ambulance transport were made by Defendant Laura Baxley.

38. Despite Cockrill's persistent and obvious conditions; the obvious deterioration of Cockrill's health; and the orders to report nausea, vomiting, and uncontrolled pain to the gastrointestinal doctor, none of the Defendants reported the noted symptoms as instructed. Further, none of the Defendants sought emergency treatment until Cockrill was found unconscious and her condition was dire.

39. Additionally, although the colonoscopy was to be rescheduled as soon as possible and Cockrill was to follow-up within two (2) weeks, neither of these appointments were made and/or Cockrill was not transported for these appointments.

40. Cockrill's condition persistently deteriorated until, on January 8, 2016, she was found unresponsive and was transported to Nashville General Hospital.

41. At the emergency room, Cockrill was diagnosed with hypotension (blood pressure of 84/67); severe hypoglycemia (glucose of twelve (12)); severe malnutrition; hypokalemia; hypomagnesemia; and complained of pain greater than ten (10) out of ten (10).

42. It was further noted both in facility records and hospital records that Cockrill had refused food for two (2) weeks.

43. Cockrill also was noted to have suffered from diarrhea, vomiting on average six (6) times per day, and having diarrhea five (5) times per day.

44. Shortly after being admitted to Nashville General, Cockrill went into cardiac arrest, and cardiopulmonary resuscitation (CPR) was attempted for approximately three and a half (3.5) hours.

45. Following unsuccessful attempts, CPR was discontinued at 3:22 a.m. on January 9, 2016, and Cockrill was pronounced dead.

46. Cockrill's cause of death was noted as "complications of invasive rectal carcinoma," which had spread to the left ovary, fallopian tube, and bladder.

## COUNT I – 42 U.S.C. § 1983 SURVIVAL ACTION

1. Plaintiff re-alleges paragraphs 1 through 58 of this complaint.
2. The Defendants, under color of state law, deprived the Decedent of rights, privileges and immunities secured by the Eighth Amendment to the United States Constitution including, but not limited to, the right to be free from cruel and unusual punishment.
3. The Defendants, and each of them, breached their duty to hold Cockrill free from known risks of harm to her. The acts and omissions of the Defendants resulted in a breach of duty owed by said Defendants to Cockrill while in the Defendants' custody.
4. The Defendants, and each of them, were deliberately indifferent to Cockrill's need for medical care and treatment during the final stages of invasive rectal carcinoma, and its attendant symptoms.
5. The Defendants had actual knowledge of Cockrill's need for medical treatment, as the need was obvious, evidenced by loss of appetite over a period of weeks; an inability to keep food or liquids down; drastic weight loss; and constant stomach pain, which was repeatedly reported to the Defendants and other CCA medical staff.
6. Additionally, the Defendants had actual knowledge of the need to report nausea, vomiting, and uncontrolled pain to the gastrointestinal doctor, as these orders were part of Cockrill's facility medical file.
7. The Defendants easily observed that Cockrill's condition was progressively and increasingly worsening. This should have indicated to the reasonable person that immediate medical treatment was necessary.

8. The Defendants' denial of any meaningful treatment in the final days of Cockrill's life constituted deliberate indifference.

9. The Defendants' failure and refusal to render meaningful medical treatment to Cockrill was a breach of their duty to provide adequate medical care to her and demonstrated a deliberate indifference to her civil rights and was, therefore, a violation of the United States Constitution and is actionable under 42 U.S.C. Section 1983.

10. Cockrill was forced to endure conscious pain and suffering in the final days of her life, both physical and emotional/mental, before her death.

11. Cockrill filed no action during her lifetime, but under the laws of the State of Tennessee, this action survives and may be asserted by her estate.

12. Plaintiff, Linda Cockrill, Cockrill's mother and next of kin, claims damages for the conscious pain and suffering incurred by her under 42 U.S.C. § 1983.

13. In addition to the physical pain and suffering, Cockrill suffered from severe emotional distress due to her condition and the time he went without treatment. Such was evidenced by her consultation with a mental health professional on January 5, 2016, in which she related feelings of fear, anxiety, depression, and sleeplessness, and that she was "just waiting for medical to take her to the hospital."

14. Furthermore, the Defendants' actions are so outrageous as to shock the conscience and are not tolerated in a civilized society. Said actions were intentionally, maliciously, and recklessly oppressive and displayed complete indifference to the rights and well-being of Cockrill such that said actions are punitive in nature and also constitute a violation of the United States Constitution.

WHEREFORE, Plaintiff prays as follows:

    A. For a jury to try the issues when joined.

    B. For the entry of judgment against the Defendants for compensatory and

special damages in an amount proven at trial including but not limited to damages for pain, suffering, mental and emotional distress.

  C. For an award of punitive damages against the individual Defendants.

  D. For costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. 1988.

  D. For an order declaring that the Defendants have acted in violation of the United States Constitution.

  E. For an order enjoining the Defendants from engaging in any of the unlawful acts, omissions, or practices complained of herein; and

  F. For such other and further relief as the court deems just and proper.

Respectfully submitted,

s/ Luke Evans
Luke Evans, BPR #023620
Bulloch, Fly, Hornsby & Evans
302 North Spring Street
P.O. Box 398
Murfreesboro, TN 37133
(615) 896-4154
lukeevans@bfhelaw.com